UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -v-

MIGUEL VALDES,
MAURICIO MIRANDA,
MAVEX CORPORATION,
CARLOS H. OCHOA,
MAYRA OCHOA,
DAYBREAK CORPORATION,
RAUL HOLGUIN, and
INES M. POLETTI DE NORIEGA,

                    Defendants.

Case No. 05-CR-156 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances</u>:

Virginia L. Chavez Romano, Esq.
Daniel L. Stein, Esq.
Assistant United States Attorneys
Michael J. Garcia, Esq.
United States Attorney
U.S. Attorney's Office, S.D.N.Y.
New York, N.Y.
*Counsel for the Government*

Barry S. Greff, Esq.
Weston, F.L.
*Counsel for Defendants Miguel Valdes & Mavex Corp.*

Donna Newman, Esq.
New York, N.Y.
*Counsel for Defendant Mayra Ochoa*

Jose M. Quinon, Esq.
Miami, F.L.
*Counsel for Defendant Ines M. Poletti de Noriega*

Oscar S. Rodriguez, Esq.
Coral Gables, F.L.
*Counsel for Defendant Raul Holguin*

Richard L. Rosenbaum, Esq.
Fort Lauderdale, F.L.
*Counsel for Defendants Carlos H. Ochoa & Daybreak Corp.*

Frederick L. Sosinsky, Esq.
New York, N.Y.
*Counsel for Defendant Mauricio Miranda*


KENNETH M. KARAS, District Judge:

Miguel Valdes, Mauricio Miranda, Mavex Corporation, Carlos H. Ochoa, Mayra Ochoa, Daybreak Corporation, Raul Holguin, and Ines M. Poletti de Noriega (hereinafter, the "Section 1960 Defendants") are charged with violating 18 U.S.C. § 1960 by operating an unlicensed money transmitting business.[1] The Section 1960 Defendants now jointly move, pursuant to Fed. R. Crim. P. 21, to transfer the venue of this action from the Southern District of New York to the Southern District of Florida.[2] For the foregoing reasons, Defendants' motion is hereby GRANTED.

---

[1]The Section 1960 Defendants are a subset of the thirty-eight Defendants charged in this case. However, the motion discussed herein is brought only on behalf of the Section 1960 Defendants. Accordingly, the Court primarily discusses the factual and legal background of the case as it pertains to the Section 1960 Defendants.

[2]The Section 1960 Defendants also move to challenge venue and to sever the charges against them from the remaining defendants. The Motion to Sever is considered below within the analysis of the Motion to Transfer. The motion challenging venue is moot, but it bears noting that venue is appropriate in the Southern District of Florida.

## I. Background

### A.     Factual Background

The Section 1960 Defendants are among thirty-eight individuals charged in a fourteen-count indictment.  The Indictment charges three categories of crimes:  narcotics importation, money laundering, and operation of unlicensed money remitting businesses.  In particular, the first count of the Indictment charges nine defendants with conspiracy to import cocaine, while the second and third counts charge a subset of these nine defendants with conspiracy to import heroin and marijuana, respectively.  All three counts allege violations of Title 21, United States Code, Section 963.  These defendants have been referred to as the Title 21 Defendants and are in Colombia pending their extradition to the United States.[3]

The Indictment also charges twenty-one defendants (including two of the Title 21 Defendants) with money laundering, in violation of Title 18, United States Code, Section 1956 (Counts Four through Ten).  These defendants have been referred to as the Section 1956 Defendants.  To date, ten of the twenty-one Section 1956 Defendants listed in the Indictment have appeared before the Court (the outstanding Section 1956 Defendants are either pending extradition, in custody elsewhere and have not appeared before the Court, or still fugitives).  The Indictment describes in some detail how these defendants used the Colombian Black Market Peso Exchange ("BMPE") to launder the proceeds of narcotics trafficking in North America back to Colombian drug lords.  In essence, the BMPE involves the exchange of Colombian pesos for United States drug dollars in a way that avoids detection by law enforcement officials.

_____

[3]The Government has estimated that it will take approximately one year for the extradition process to run its course.  (Status Conference Tr. 16-17, Jan. 26, 2006)

3

(Indictment ¶¶ 16-20)

Counts Eleven through Fourteen involve allegations that the Section 1960 Defendants conducted, controlled, managed, and owned all or part of a money transmitting business that was not licensed by the State of Florida, and which failed to comply with the Federal Government's money transmitting business registration requirements.[4]  The Indictment also alleges that the Section 1960 Defendants' money remitting businesses were operated and controlled through bank accounts in Florida, and that these businesses "caused checks to be drawn on and caused interstate and international wire transfers to be received at and made from these accounts, including from and to New York."  (Indictment ¶¶ 32, 39, 46, 53)

Notably, Counts Eleven through Fourteen generally identify Section 1960 as the statute which the defendants purportedly have violated, and the "Background" section of each Count alleges that some of the money transferred by the Section 1960 Defendants was in fact narcotics proceeds.  However, the language used in the "Statutory Allegation" section of each Count only alleges that the Defendants' conduct was unlawful because their alleged money remitting businesses were unlicensed or otherwise did not comport with federal regulations, and not that the Defendants operated a money remittance business knowing (or consciously avoiding the

---

[4]Under Section 1960(b), an unlicensed money transmitting business means a money transmitting business which affects interstate or foreign commerce and:  (i) "is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;" or (ii) "fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section;" or (iii) "otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity."  18 U.S.C. § 1960(b)(1)(A)-(C).

4

possibility) that the funds remitted were derived from any criminal offense, including narcotics trafficking. Indeed, the Government conceded as much during oral argument on several occasions. (Hrg. Tr. 8-12, Dec. 7, 2005 ("12/7/05 Tr."); Hrg. Tr. 24, 30-33, Jan. 26, 2006 ("1/26/06 Tr.")) Thus, the Indictment does not allege, and the Government's theory of the Section 1960 Defendants' guilt does not depend on, the Section 1960 Defendants' knowledge regarding the criminal nature of some of the moneys allegedly remitted.

### B. Procedural History

The Section 1960 Defendants first filed their motions to dismiss the Section 1960 Counts for improper venue, pursuant to Fed. R. Crim. P. 18 and the Sixth Amendment, or, in the alternative, to transfer the case to the Southern District of Florida, pursuant to Fed. R. Crim. P. 21, on October 11, 2005. After the motions were fully submitted, on November 23, 2005, the Court held oral argument. During this argument, the Government acknowledged that it was not alleging, or relying on proof, that any of the Section 1960 Defendants knew, or consciously avoided the possibility that, some of the financial transactions were the proceeds of narcotics trafficking. (12/7/05 Tr. 8-12) Moreover, when asked to detail the financial transactions from or to the Southern District of New York, the Government identified only a couple of wire transfers from an undercover account in New York. (12/7/05 Tr. 46-47) However, when asked to represent that there were other transactions related to the unlicensed money remittance businesses that involved New York, the Government affirmed that there were others. (12/7/05 Tr. 48)

After the initial argument, the Court determined that it was appropriate to require the Government to provide a bill of particulars "'describing facts it intends to establish at trial which it claims are sufficient to establish venue in this district' with respect to Counts eleven, twelve,

5

and fourteen of the Indictment." (Order, Dec. 22, 2005) (quoting *United States v. Wilson*, No. 01 Cr. 53, 2001 WL 798018, at *6 (S.D.N.Y. July 13, 2001))  In the same Order, the Court noted that "[b]ecause of the number of defendants involved, transfer in this case, might essentially grant the Section 1960 Defendants severance from the other defendants and potentially would give rise to 'a multiplication of litigation' resulting in great inconvenience and considerable expense for the courts and the Government." (Order, Dec. 22, 2005) (quoting *United States v. Morrison*, 946 F.2d 484, 489 (7th Cir. 1991))  Therefore, the Court ordered the parties to brief their respective positions regarding the severance of the Section 1960 Defendants from the Section 1956 and Title 21 Defendants.

The Government submitted its first Bill of Particulars, which details 156 transactions involving Defendants' purported money remitting businesses that are connected to New York.[5] (Letter of Virginia Chavez Romano and Daniel L. Stein to the Court, Jan. 4, 2006 ("1/4/06 Letter"))  Three of these transactions involve the undercover account – one wire transfer to Defendant Mayvex's account (Count Eleven) and two wire transfers to Defendant Daybreak's account (Count Twelve).  (1/4/06 Letter)  There are no undercover wire transfers involving

---

[5]Because Defendant Raul Holguin had not yet joined in the transfer motion, the Government was not asked to provide a bill of particulars related to Count Thirteen. Subsequently, at the oral argument held on January 26, 2006, counsel for Defendant Holguin indicated for the first time his desire to join in the transfer motion of the other Section 1960 Defendants.  (1/26/06 Tr. 37-38)  The Government did not object.  (1/26/06 Tr. 37-38) Accordingly, the Court ordered Holguin to submit an affidavit setting forth the factual basis in support of the motion and ordered the Government to provide a Bill of Particulars of the transactions that occurred in this district related to Count Thirteen.  (Order, Feb. 9, 2006)  The Government submitted its Count Thirteen Bill of Particulars, which lists nine New York businesses to which Holguin allegedly sent BMPE dollars, (Letter of Virginia Chavez Romano and Daniel L. Stein to the Court, Feb. 15, 2006 ("2/15/06 Letter")), and Holguin submitted his affidavit in support of his motion to transfer on February 17, 2006.

Defendant Poletti (Count Fourteen). (1/4/06 Letter) None of the remaining 153 New York transactions is alleged to be narcotics related, and it is still unclear which of these transactions are alleged to be violations of Section 1960 (1/26/06 Tr. 22-26). The parties also submitted their respective positions regarding severance of the Section 1960 Defendants from the remaining Defendants, and the Court held oral argument on January 26, 2006.

## II. Discussion

### A.      Standard of Review

Rule 21(b) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." Fed. R. Crim. P. 21(b). The decision of whether to grant a motion for transfer to another venue is "vested in the sound discretion of the district court." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990).

Defendants bear the burden of justifying a transfer under Rule 21(b). *See United States v. Wilson*, No. 01 Cr. 53, 2001 WL 798018, at *1 (S.D.N.Y. July 13, 2001); *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982) (noting Judge Weinfeld's description of the burden that "to warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district . . . .") (internal citations and quotations omitted).

Motions to transfer venue are analyzed in accordance with the Supreme Court's decision in *Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240 (1964). Under *Platt*, to determine whether a transfer is warranted, courts should consider a non-exclusive list of ten factors: (i)

location of the defendants; (ii) location of the witnesses; (iii) location of the events in issue; (iv)

location of documents and records; (v) disruption of the defendants' business(es); (vi) expense to

the parties; (vii) location of counsel; (viii) relative accessibility of the place of trial; (ix) docket

condition of each district; and (x) other special elements. *Platt*, 376 U.S. at 244; *see also*

*Maldonado-Rivera*, 922 F.2d at 966 (same). "No one of these considerations is dispositive and it

remains for the court to try and strike a balance and determine which factors are of greatest

importance." *Maldonado-Rivera*, 922 F.2d at 966 (citation and quotation omitted); *see also*

*United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 455 (S.D.N.Y. 1997) (citing *Maldonado-*

*Rivera*, 922 F.2d at 966) (holding that courts "should not give any one factor preeminent weight

nor should it assume that the quantity of factors favoring one party outweighs the quality of

factors in opposition"). "As a general rule, however, a criminal prosecution should be retained in

the original district in which it was filed." *Wilson*, 2001 WL 798018, at *1 (citation and

quotation omitted).

> B. *Platt* Factors
>
>> 1. Location of the Defendants

Since the Second Circuit's decision in *Maldonado-Rivera*, "courts in this district have

afforded greater weight to the defendant's interest in being tried in the district of his residence

than to any other factor." *United States v. Layne*, No. 05 Cr. 87, 2005 WL 1009765, at *2

(S.D.N.Y. May 2, 2005) (citation and quotation omitted). Yet, "[t]o the extent that there is a

'policy' favoring the trial of defendants where they reside, this 'policy' is in tension with the

more general presumption that 'a criminal prosecution should be retained in the original

district.'" *Spy Factory, Inc.*, 951 F. Supp. at 464 (quoting *Posner*, 549 F. Supp. at 477); *see also*

*Wilson*, 2001 WL 798018, at *1; *United States v. Conner*, No. 00 Cr. 731, 2001 WL 114314, at *3 (S.D.N.Y. Feb. 9, 2001).

Here, it is undisputed that the individual Section 1960 Defendants, save for Raul Holguin, reside in the Southern District of Florida and the two corporations operate out of Florida. Defendant Valdes (Count Eleven) resides in Miami with his wife and his twin infants. (Mavex Transfer Reply Br. 7) Defendant Miranda (Count Eleven) also resides in Miami with his wife and two young children (ages two and five). (Mavex Transfer Reply Br. 7) In addition, Miranda claims he is also responsible for three family members (his stepsister, her five-year-old child, and his sixty-year-old mother) who recently legally emigrated from Cuba. (Mavex Transfer Reply Br. 7) Defendant Mayra Ochoa (Count Twelve), a single mother who receives no child-support, has lived in Florida since 1996 with her two children (ages twenty-two and nineteen) whom she supports. (Ochoa Transfer Br. 6) Defendant Carlos Ochoa (Count Twelve) has lived in Broward County, Florida since 1999 with his wife and two children (ages twelve and thirteen). (Ochoa Transfer Br. 7) Defendant Poletti (Count Fourteen) lives in Miami with her four children (ages ten through nineteen). (Poletti Transfer Br. 7) Defendant Holguin (Count Thirteen) resides in Barranquilla, Columbia and has family in Florida with whom he asserts he would stay during a trial in that state. (Holguin Br. 2)

"While a defendant would always like to be close to his loved ones, this desire *alone* is insufficient to warrant a transfer." *Layne*, 2005 WL 1009765, at *3. Yet, family obligations, including the care of children, militates in favor of transferring proceedings to the district in which a defendant resides. *See United States v. Hanley*, No. 95 Cr. 394, 1995 WL 60019, at *2 (S.D.N.Y. Feb. 10, 1995); *United States v. Russell*, 582 F. Supp. 660, 662 (S.D.N.Y. 1984)

(finding that defendants living with their three college-aged children in Memphis "argues strongly" for transfer of the case out of the Southern District of New York).  Although Defendants' desires *alone* are insufficient to warrant transfer, Defendants' residence and family responsibilities in Florida clearly favor transfer of venue to Florida.

<u>2.      Location of the Witnesses</u>

"'[G]enerally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer. . . .  Defendants must offer specific examples of witnesses' testimony and their inability to testify because of the location of the trial. . . .  the court must rely on 'concrete demonstrations' of the proposed testimony.'"  *Spy Factory, Inc.*, 951 F. Supp. at 456 (citations omitted); *see also United States v. Guastella*, 90 F. Supp. 2d 335, 338-39 (S.D.N.Y. 2000).  However, courts also have recognized that "the impact of character witnesses is generally greater in the district where such witnesses live and work."  *United States v. Martino*, No. 00 Cr. 389, 2000 WL 1843233, at *6 (S.D.N.Y. Dec. 14, 2000).

Defendants Valdes, Miranda, and Mavex Corporation state that they will be required to call numerous witnesses, including business contacts in Miami in order to establish that they run a legitimate business.  (Mavex Transfer Br. 7-8)  Additionally, they anticipate the need to call character witnesses from Florida.  (Mavex Transfer Br. 9)  In a supplement to their Motion to Transfer, the Mavex Defendants also submitted a list of witnesses who reside in Florida who would testify as to the legitimacy of their business.  (Mavex Supplemental Transfer Br. 2)  This list consists of nine people who work directly for, or with, the defendants, and thirty-five of Mavex's customers.  (Mavex Supplemental Transfer Br. 4-6)  The Ochoas and Daybreak Corporation state they intend to call a number of witnesses from Florida who have knowledge of

their business as well as several character witnesses from Florida. (Ochoa Transfer Br. 12-13) Defendant Poletti's witnesses, including her character witnesses, also live in Florida and therefore, would be inconvenienced by a New York trial. (Poletti Transfer Br. 14-15) Defendant Holguin states that his possible witnesses include Florida bank employees. (Holguin Br. 3)

While the Government initially contended that it would call twenty to thirty witnesses in its case-in-chief, (Gov't Transfer Br. 19-20), at oral argument, the Government conceded that, at trial, only one undercover witness would most likely testify at a trial of the Section 1960 Defendants.[6] (1/26/06 Tr. 34) Further, the Government's other witnesses are located throughout the United States, Puerto Rico, and Central and South America. (Gov't Transfer Br. 20) Thus, a Florida trial would potentially be more convenient for the Government's witnesses than a New York trial, and certainly no less convenient.

The Section 1960 Defendants have not comprehensively set out the proposed testimony of their Florida witnesses or why these witnesses would be unavailable to testify if the trial were held in New York. However, Defendants do more than merely make a general claim that their witnesses would be inconvenienced by a New York trial. It is clear from oral argument that a significant number of the Section 1960 Defendants' witnesses would testify about the legitimacy of Defendants' businesses and the transactions listed in the January 4 Bill of Particulars. (12/7/05 Tr. 17-18) These Florida witnesses would undoubtedly be inconvenienced by having to testify in New York. In addition, the fact that the Government will likely only need to call one or two witnesses from New York (1/26/06 Tr. 34) suggests that the Government's witnesses will

---

[6]Other Government witnesses would likely include records custodians, but the Court suggested, and the Government agreed, that stipulations could be used for these witnesses. (*See* 12/7/05 Tr. 67)

not be greatly inconvenienced. Finally, the potential inconvenience to the witnesses outside of Florida must be weighed against the effect a New York trial may have on the availability and the testimony of the various Florida-based character witnesses. *See Layne*, 2005 WL 1009765, at *3. Given the impact of character witnesses, the number of defense witnesses that reside in Florida, and the limited inconvenience to the Government's handful of witnesses, the second *Platt* factor weighs in favor of transfer to the Southern District of Florida.

        3.     Location of the Events in Issue

The location of where the events in issue took place carries considerable weight. *Martino*, 2000 WL 1843233, at *7. For instance, while venue may attach in one district, when the "nerve center" of the events at issue occurred in another district, transfer has been found appropriate. *Hanley*, 1995 WL 60019, at *3. Yet, where the alleged criminal activity is national in scope and has ties to multiple sites, the location of the events at issue favors neither side. *See Spy Factory, Inc.*, 951 F. Supp. at 457 (citations omitted); *see also Layne*, 2005 WL 1009765, at *4.

The Government concedes that the implicated Section 1960 Defendants' accounts and businesses are located and maintained in Florida, but alleges that these Florida accounts were also used to conduct money transfers to and from "many places outside of Florida." (Gov't Transfer Br. 21) Most, if not all, of the alleged acts and conduct of the Section 1960 Defendants in furtherance of the alleged unlawful money transmitting occurred in the Southern District of Florida. [7] For example, the Section 1960 Defendants are alleged to have wire-transferred dollars

_____

[7]As noted, the lengthy January 4, 2006 Bill of Particulars, listing 156 transactions, contains only three transactions for the defendants in Counts Eleven (Defendants Valdes, Miranda, and Mavex Corp.) and Twelve (Defendants Mayra Ochoa, Carlos Ochoa, and Daybreak

from accounts they "operated and controlled in Miami" to other accounts. (Indictment ¶¶ 30, 37, 44, 51) Although the Government contends that the criminal activity alleged to have occurred was national in scope, the central location of the criminal acts allegedly committed by the Section 1960 Defendants is in the Southern District of Florida, not New York, therefore, these facts weigh in favor of transfer.

### 4. Location of Documents and Records

The fourth *Platt* factor, the location of documents and records, has consistently been found to not be a "major concern in these days of easy and rapid transportation." *Hanley*, 1995 WL 60019, at *3 (citation omitted). Although both the Section 1960 Defendants and the

---

Corp.) that explain why activity that is connected to the Southern District of New York is a violation of Section 1960. (1/4/06 Letter, Count Eleven No. 1, Count Twelve Nos. 1, 2) At oral argument, the Government acknowledged that it merely searched through its available records and took any transaction that was connected to New York and placed it in the Bill of Particulars without considering whether or not each of the listed transactions violated Section 1960, or was otherwise connected to the narcotics importation and/or money laundering alleged in the Indictment. (1/26/06 Tr. 26) The Government also conceded on the record that they "obviously erred on the side of over-inclusion" when deciding what transactions to include in the Bill of Particulars. (1/26/06 Tr. 25)

Even more problematic is the fact that seven months since the Indictment was returned, the Bill of Particulars fails to properly allege any transaction that was criminal in nature which would establish venue in the Southern District of New York as to Defendant Poletti. The seven transactions listed in the Bill of Particulars for Poletti (Count Fourteen) only involve funds drawn on New York based bank accounts without any corresponding payment or other proof that those funds were part of a money transmitting business. For example, the Bill of Particulars for Poletti includes checks drawn on New York bank accounts to Inversiones Nolett CA for $54.14 and $93. (1/4/06 Letter, Count Fourteen No. 5) The Government could not explain at oral argument how these seven transactions "describe[] facts it intends to establish at trial which it claims are sufficient to establish venue in this district" for Defendant Poletti. *Wilson*, 2001 WL 798018, at *6 (citation omitted).

The February 15, 2006 Bill of Particulars for Defendant Holguin (Count Thirteen), lists nine New York businesses to which Holguin allegedly illegally remitted BMPE dollars. (2/15/06 Letter) These transactions provide sufficient detail to connect Holguin's alleged violation of Section 1960 to New York. Nevertheless, Holguin's Motion to Transfer is granted with the other Section 1960 Defendants in order to avoid an unnecessary multiplication of litigation.

Government claim that they would be disadvantaged by having to transport their voluminous records if a trial took place away from their "home-turf," neither side is persuasive on this point. Considering the parties agreed that a potential trial of the Section 1960 Defendants would likely take no more than four days, (1/26/06 Tr. 34), the Court is not convinced that the documentary evidence in this case is so voluminous as to favor either party. Accordingly, this factor does not favor either retaining or transferring the action.

        5.    Disruption of the Defendants' Business(es)

"Inconvenience to the defendant or his business is not, by itself, a sufficient basis for transfer of venue." *Guastella*, 90 F. Supp. 2d at 340. Nevertheless, where a business, especially a struggling business, depends heavily upon the personal involvement of the defendants, this factor favors transfer. *See Spy Factory, Inc.*, 951 F. Supp. at 458-59; *see also Layne*, 2005 WL 1009765, at *4-5.

Defendant Poletti claims that her presence in Florida is important because it will allow her to "supervise [her] business, make important day-to-day decisions, and assure that the business will economically survive." (Poletti Transfer Br. 16-17) Similarly, Defendants Valdes and Miranda claim that they are "solely responsible" for running their marine supply business and that a New York based trial would mean losing their company and "their sole means of supporting themselves and their family." (Mavex Transfer Br. 5) The Ochoa Defendants also claim their small businesses require their daily personal presence in Florida. (Ochoa Transfer Br. 16-17) The Government counters that regardless of where the case is tried, trial preparation would take the defendants away from their businesses, so this factor should not favor transfer. (Gov't Transfer Br. 26)

14

The Government is correct in noting that a defendant's business will be harmed, to a certain degree, regardless of where a trial is held. *See, e.g.*, *United States v. Coriaty*, No. 99 Cr. 1251, 2000 WL 1099920, at *3 (S.D.N.Y. Aug. 7, 2000) (noting that criminal trials invariably impose burdens on defendants and that, in light of modern communication technology, it is unclear why a New York trial would be more harmful to the defendant's business than a trial in Florida). Nevertheless, while interruption is inevitable regardless of where the trial is held, it is undisputable that the extent of any potential disruption would be less if the trial took place in Florida. *See Layne*, 2005 WL 1009765, at *5 (finding that although the defendants' ability to conduct business would be limited wherever the case was tried, transferring the case to the requested district would at least allow the defendants to conduct more of their business); *see also Russell*, 582 F. Supp. at 663 (recognizing that although a substantial amount of the defendants' time will be occupied by the trial, it would still be possible for the defendants to carry on their business, at least to a limited extent, if they are tried in the alternative venue).

Here, where the Defendants' businesses appear to rely so heavily on the personal day-to-day involvement of the Defendants, the potential disruption to the Defendants' business is an additional factor in favor of transfer.

      6.      Expense to the Parties

Every criminal prosecution imposes expenses on defendants, but mere inconvenience and the normal burdens associated with a trial do not make the necessary showing that a transfer is warranted. *See United States v. Culoso*, 461 F. Supp. 128, 136-37 (S.D.N.Y. 1978). A successful transfer motion requires more than a bald assertion that a trial out of a defendant's home district would be more expensive than if the trial were held in the defendant's home

district.  *See Spy Factory, Inc.*, 951 F. Supp. at 459 n.4.  Defendants need to make a showing

that, at least to some degree, they have insufficient funds to provide for their defense if the case is

not transferred.  *Id.*

The Section 1960 Defendants submit that a trial in New York would pose a significant

expense (consisting of airfare, hotels, food, and witnesses), above and beyond what a trial would

cost if it were held in Florida.  (Ochoa Transfer Br. 18; Poletti Transfer Br. 17; Mavex Transfer

Br. 11; Holguin Br. 3)  In response, the Government asserts that it would also be put to great

expense to relocate its prosecution team and documents to Florida while conducting a concurrent

trial in New York of the other defendants.

The Section 1960 Defendants have not demonstrated that they are financially incapable of

funding their defense if the case is not transferred to Florida.  The Government, on the other

hand, would also not experience a significant expense if the Section 1960 Defendants' trial were

transferred to Florida.  Thus, the sixth *Platt* factor does not weigh in favor of either conclusion.

7.     Location of Counsel

The next factor is the location of counsel.  The Section 1960 Defendants have a mix of

both New York and Florida counsel which would suggest this *Platt* factor does not favor transfer.

However, considering that this case may involve the interpretation and application of Florida

laws regulating money transmitting businesses, it is reasonable to think that Florida counsel

would provide more qualified representation to the Section 1960 Defendants.  *See Layne*, 2005

WL 1009765, at *6 (finding "Location of Counsel" factor weighed in favor of defendants partly

due to the fact that Florida counsel "would provide more qualified representation to the

Defendants because of their keen knowledge of Florida substantive law").  Therefore, the seventh

*Platt* factor weighs slightly in favor of transfer of venue.

### 8. Relative Accessibility of the Place of Trial

Next, is the relative accessibility of the place of trial. Neither party has demonstrated any problems with accessibility that would warrant favoring one forum over the other. *See Spy Factory, Inc.*, 951 F. Supp. at 460. Therefore, the eighth *Platt* factor does not weigh for or against transfer.

### 9. Docket Condition of Each District

Defendant Poletti, on behalf of the other Section 1960 Defendants, contends that the Southern District of New York has a greater number of pending cases and takes longer to dispose of cases than the Southern District of Florida. (Poletti Transfer Br. 18-19) Ignoring this point, the Government counters that since the non-Section 1960 Defendants would remain in New York if transfer were granted to the Section 1960 Defendants, and given the potential overlapping evidence against the Section 1960 Defendants and the non-Section 1960 Defendants, concerns over judicial economy suggest the Section 1960 Defendants should remain in New York. (Gov't Transfer Br. 29) Because there is little overlap in the proof against the Title 21 or Section 1956 Defendants and the Section 1960 Defendants, the Government's initial claim of judicial economy is marginally persuasive, at best. In any event, since the docket conditions in the two Districts are relatively comparable, this *Platt* factor favors neither party.

### 10. Other Special Elements

Initially, neither the Section 1960 Defendants nor the Government raised any "other special elements" that merit discussion. However, the Court was concerned that the Motion to Transfer not serve as a back-door motion for severance and ordered the Parties to brief their

positions regarding the severance of the Section 1960 Defendants. (Order, Dec. 22, 2005) Not unexpectedly, the Section 1960 Defendants argued that they were, in fact, improperly joined as Defendants or, in the alternative, that their trial should be severed, while the Government argued for one trial of all Defendants.

Perhaps somewhat surprising, there is little in the caselaw that addresses the interplay between Rule 21 (Transfer) and Rules 8 and 14 (Joinder and Severance).[8] On one hand, the law recognizes the interest of a defendant to be tried in his home jurisdiction when a prosecution in another jurisdiction would impose significant burdens on that defendant. *See Spy Factory, Inc.*, 951 F. Supp. at 456. On the other hand, the law also recognizes the presumption that a defendant is to be tried where a grand jury returns the indictment, and that properly joined defendants should be tried together. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together."). Thus, the question of whether to grant a transfer motion to a subset of defendants in a complex, multi-defendant case would seem to squarely pit these competing interests against one another.

In *United States v. Morrison*, 946 F.2d 484, 489-90 (7th Cir. 1991), the Seventh Circuit confronted this question where one of six defendants accused of conspiring to sell narcotics sought to transfer his trial from Wisconsin to Puerto Rico. In affirming the district court's denial of that motion, the Seventh Circuit found that although the moving defendant made his home in, and his criminal conduct occurred solely in, Puerto Rico, those factors were outweighed by the

---

[8]The Court has found a case in this District which involved an application to transfer venue pursuant to 18 U.S.C. § 3237(b), which deals with venue in certain types of IRS crimes involving use of the mail. *See United States v. Turkish*, 458 F. Supp. 874, 877-80 (S.D.N.Y. 1978). In *Turkish*, the court denied the transfer motion after considering the geographical locale of the conspiracy and judicial economy. *Id.* at 878-79.

"countervailing consideration[]" that the Government should only have to try the six co-

conspirators once. *Id.* at 489-90. Or, as the Court put it: "Because of the number of defendants

involved, to have transferred Andrini-Varga's trial – essentially granting him a severance –

would have given rise to a 'multiplication of litigation' resulting in great inconvenience to the

witnesses involved as well as considerable expense to the government." *Id.* at 489 (quoting

*United States v. Zylstra*, 713 F.2d 1332, 1336 (7th Cir. 1983)).

A contrary view was expressed in *United States v. Clark*, 360 F. Supp. 936 (S.D.N.Y.

1973), *mandamus denied sub nom.*, *United States v. Griesa*, 481 F.2d 276 (2d Cir. 1973) (per

curiam), where the court transferred the trial of five of six jointly-charged defendants in a

complex securities fraud case to the Western District of Oklahoma. There, the Government

argued that transferring the five defendants would result in "two lengthy trials and much

unnecessary duplication of effort because of the common issues involved." *Id.* at 946. This

interest was viewed by the court to be "outweighed by the strong considerations of fairness with

respect to those seeking transfer," and, "in any event," the court noted, "the situation the

Government now faces was brought about by its own questionable decision to prosecute this case

in a district remote from most of the events and persons involved." *Id.*

Each of these cases can be distinguished from the one before the Court. Unlike

*Morrison*, the moving Defendants are not among a larger group of Defendants also charged with

the same crime. Instead, they are charged with entirely separate crimes than the non-moving

Defendants. Moreover, the Government has repeatedly conceded that it does not intend to allege

that the Section 1960 Defendants knowingly engaged in any financial transactions, even if such

transactions were done without proper licenses and not otherwise in compliance with certain

regulatory requirements, to further the goals of the alleged narcotics traffickers and money launderers also charged in the Indictment.

But, the facts in *Clark* are also distinguishable.  For example, in *Clark*, the Court criticized the Government's decision to charge that case in the Southern District of New York, instead of in Oklahoma, where the bulk of the criminal conduct allegedly took place.  Unlike *Clark*, however, here the criminal conduct allegedly spanned three countries (Colombia, United States, and Canada) and many districts within the United States, including the Southern District of New York.  Indeed, the Indictment lists several overt acts in furtherance of the narcotics and money laundering conspiracies which occurred in this District, including the possession of hundreds of thousands of dollars of narcotics proceeds.  Moreover, as is clear from both Bill of Particulars, the Government is alleging that at least some of the ill-gotten money was transferred from New York to some of the Section 1960 Defendants' accounts in Florida.  Thus, whatever the merits of the Section 1960 Defendants' transfer motion, this is not a case where the Government has stretched by indicting the case in this District.

Thus, neither case provides pinpoint guidance on how to resolve the competing interests of the Government and the moving Defendants in this action.  However, the Court respectfully concurs with the view implicit in *Morrison*:  that transfer of a subset of defendants in a multi-defendant case requires serious consideration of the Government's interest in avoiding duplicate trials.  To ignore the Government's interest in a joint trial of properly joined defendants would be contrary to the language of Rule 21(b), which requires the Court to weigh the "convenience of the parties and witnesses," as well as what is "in the interest of justice."  Nothing in the Rule limits consideration only of the convenience of defendants or their witnesses, or of what might be

just only to the moving defendants. And, because severing the trial of properly joined defendants without good reason is contrary to the interest of justice,[9] let alone inconvenient to those who might testify for the Government,[10] it is appropriate therefore to look at what impact a transfer would have on the case as a whole. Of course, this does not mean that a motion to transfer in circumstances like the one present here should be governed solely by joinder principles. Instead, the Government's interest in a joint trial is appropriately weighed as a "special element" along with the other *Platt* factors to be considered. Specifically, in a case where a subset of defendants charged with a crime separate from the other defendants seeks to transfer their prosecution to another district, the court should evaluate the burden on the Government (and its witnesses) in having the case split into two different jurisdictions. It is for this reason that the Court ordered the parties to provide supplemental briefing on joinder and severance principles as they apply to this case.

After careful consideration of the parties' submissions, the Court concludes that the transfer of the Section 1960 Defendants to the Southern District of Florida would not sufficiently undermine the interests of justice normally found in a trial of jointly charged defendants. The first part of this analysis requires consideration of principles governing joinder of defendants in

---

[9] *See Zafiro*, 506 U.S. at 537 ("Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.") (citations and quotations omitted).

[10] *See Richardson v. Marsh*, 481 U.S. 200, 210 (1987) ("It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.").

an indictment.  Rule 8(b) governs the joinder of two or more defendants in the same indictment.

*See United States v. Feyrer*, 333 F.3d 110, 113 (2d Cir. 2003).  Rule 8(b) states:

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

The Second Circuit has interpreted "the same act or transaction" or "the same series of acts or transactions" to mean that joinder is proper when two or more persons' criminal acts are "unified by some substantial identity of facts and participants, or arise out of a common plan or scheme." *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (citations omitted); *see also United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990) (affirming the joinder, in a six defendant trial, of an extortion count and a tax evasion count alleged solely against one defendant, even though the extortion count did not involve the same victim as alleged in other counts of the indictment, because the extortion count was within the "same series of acts or transactions" as the extortions charged against the co-defendants).  Under these standards, joinder is allowed when "one scheme stem[s] from the other," *United States v. Turoff*, 853 F.2d 1037, 1044 (2d Cir. 1988), or where "there is a logical nexus between the transactions."  *United States v. Joyner*, 201 F.3d 61, 75 (2d Cir. 2000) (citation omitted).

Here, the Government argues with some persuasion that all the Defendants are unified through the "logical nexus" between the narcotics-driven money laundering and the money remitting transactions, even though they are not charged in the same conspiracies.  (Gov't Severance Br. 4-6)  However, the argument fails to recognize that while all defendants in an

indictment need not be charged with the same offense or offenses, there must be at least some allegation or offer of proof that all defendants share a common goal or purpose, or at least be aware of the other schemes. *See United States v. Greenfield*, No. 01 Cr. 401, 2001 WL 1230538, at *4 (S.D.N.Y. Oct. 16, 2001) ("Even if there are some common participants, generally similar objectives, and common confidential informants, multiple conspiracies must have a common goal or purpose to be joined under Rule 8(b)."); *United States v. Kouzmine*, 921 F. Supp. 1131, 1133 (S.D.N.Y. 1996) ("[T]here was no evidence that the defendants joined in the indictments were aware of or joined in all of the schemes alleged."); *United States v. Menashe*, 741 F. Supp. 1135, 1138 (S.D.N.Y. 1990) (same). Thus, the facts of this case arguably distinguish those cases cited by the Government. *See Greenfield*, 2001 WL 1230538, at *4 ("The facts of *Cervone* indicate . . . that the two counts against Perna related to his involvement in a conspiracy whose overarching goal was to obtain bribes for defendant Cervone and certain other labor officials." (citing *Cervone*, 907 F.2d at 336-39)); *United States v. Lech*, 161 F.R.D. 255, 257 (S.D.N.Y. 1995) ("In *Turoff*, all of the defendants were aware of and participated in both schemes. In the instant case, Lech had very little, if any, knowledge of the other schemes, and did not participate in them.").

The Court has no doubt that those who operate money remittance businesses may, at times, know or suspect that they are helping to launder narcotics proceeds, thus mutually benefitting narcotics traffickers, money launderers, and unlicensed money remittance business owners. Indeed, it may be that while the Government cannot prove, which presumably is why it has not alleged, that the Section 1960 Defendants knew or suspected that the transactions discussed in the Indictment and the January 4 Bill of Particulars, were narcotics-related funds, it

is entirely possible that the Section 1960 Defendants were fully aware of the criminal nature of the money remitted on behalf of the co-Defendants. If an indictment alleges such scienter, joinder of money remitters, money launderers, and drug dealers would be a ground ball. However, the question of the knowledge of the Section 1960 Defendants is not a metaphysical one, but instead is limited to what the Government has alleged in its Indictment. Here, because the Government has not alleged that the Section 1960 Defendants knew, or consciously avoided the possibility, that they were facilitating narcotics-related money laundering, it is difficult to understand how they shared a common goal with the other Defendants. Yet, the Court need not, and does not, decide the question of joinder under Rule 8(b). Instead, given the unique facts of this case, there is a fault line in the Indictment that suggests that the proof of the money remitting schemes is not dependent on the proof of money laundering or narcotics schemes, or vice versa. *Compare Turoff*, 853 F.2d at 1044 ("[T]he tax fraud hinged on the fraudulent activities taken to advance the Compumeter conspiracy. Consequently, the proof of one scheme is indispensable for a full understanding of the other."). As such, excising the Section 1960 Defendants via a transfer of the charges against them to Florida does not sufficiently undermine the joinder principles embodied in Rule 8 to justify denial of the Rule 21 motion. *Cf. Lech*, 161 F.R.D. at 257-58 ("[T]he Government concedes that Lech had no involvement in the other schemes charged, and at most he had cursory knowledge of the other criminal activities involving [the co-defendants]. Even if the Eastern Parkway Project was a springboard for the other two schemes, only [the co-defendants] knew how to use the secrets of that success.").[11]

---

[11]The Government's argument linking the Section 1960 Defendants with the other defendants has evolved over time. Initially, the Government acknowledged that it was not alleging that the Section 1960 Defendants knew that the money transfers referred to in the

This conclusion is not undermined by the caselaw applying Fed. R. Crim. P. 14.  In the

_____

Indictment were the product of criminal activity.  (12/7/05 Tr. 9) ("[T]his indictment certainly doesn't allege that they knew that it was part of narcotics trafficking.")  At the same time, however, the Government suggested that "the way the money transmission business operated, according to the government's theory is integrally wound in with the way the black market peso exchange was used to launder drug proceeds."  (12/7/05 Tr. 12)  In its brief opposing severance, the Government tied these statements together merely to point out that "the money remitting transactions undertaken by the Moving Defendants were part of the same series of transactions as the drug trafficking and money laundering transactions committed by the other defendants." (Gov't Severance Br. 7)

Yet, at the second round of oral argument, different counsel for the Government asserted that the transactions listed in the January 4 Bill of Particulars, even if unrelated to any narcotics transactions, constituted violations of Section 1960:

> The Court:  Are you alleging[,] because that's what a bill of
> particulars is supposed to be, . . . . are you alleging that the deposit
> of those two checks violates 1960?
>
> AUSA:  Yes.
>
> The Court:  Really.  Are you alleging that those two checks are
> proceeds of drug dealing?
>
> AUSA:  No.
>
> The Court:  Are you alleging that they are part of the money
> laundering scheme?
>
> AUSA:  No.

(1/26/06 Tr. 24)  Later, regarding the earlier claim that the source of the funds remitted by the Section 1960 Defendants might be material to establishing a violation of Section 1960, the Government clarified the point by indicating that it only needed to establish that the funds remitted were unrelated to Defendants' maritime business, and that the Government would be satisfied with a stipulation that "wouldn't state where the money came from but state that it was unrelated to the sale of boats."  (1/26/06 Tr. 33)  Thus, while it may be that the Government will want to show that the transactions it ultimately determines are illegal money remittances were not related to Defendants' purported legitimate businesses, it does not need to establish that the transactions involved narcotics proceeds.  In any event, none of these various proffers reflects evidence that the Section 1960 Defendants knew or had reason to believe that the transactions involved narcotics profits.

normal case, joint trials of properly joined defendants is proscribed "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Thus, prejudice alone is not enough to require severance because "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*; *see also United States v. Diaz*, 176 F.3d 52, 104 (2d Cir. 1999) ("[E]ven where the risk of prejudice is high, measures less drastic than severance, such as limiting instructions, will often suffice to cure any risk of prejudice."). As the Government has noted (Gov't Severance Br. 11), while there may be some risk of prejudice to the Section 1960 Defendants from a joint trial with the remaining Defendants, the obvious differences in the type of crimes the moving and the non-moving Defendants are charged with makes a curative instruction a particularly effective alternative to severance. *See United States v. Chang An-Lo*, 851 F.2d 547, 556 (2d Cir. 1988) (noting that potential spillover can be cured where "evidence with respect to each of the defendants [is] adequately straightforward that the jury could consider it without any significant spillover effect").

However, as with Rule 8 joinder, the Court need not decide the severance issue. Rather, the only question is whether transfer of the Section 1960 Defendants will so significantly undermine the Government's valid interests in a joint trial as to outweigh the *Platt* factors favoring transfer. Given the unusual facts of this case, the answer is no. The starting point for this conclusion is the following colloquy:

> The Court: The [curative] charge would go something like, ladies
> and gentlemen, you are not to consider evidence related to
> narcotics trafficking and money laundering of the proceeds of
> narcotics trafficking as to the 1960 defendants, the only question
> you are being asked is whether or not they engaged in, managed or

> controlled an unlawful money remittance business. They are not
> charged with participating in money laundering, they are not
> charged with knowledge that the money that went into their
> account was as a result of drug dealing. Right, because your
> argument, the charge is so different, that's precisely why it's not
> prejudicial. Would you concede that that charge at a minimum
> would have to be given if they are jointly charged and jointly tried?
>
> AUSA: That's right.

(1/26/06 Tr. 28-29) In light of this concession, the Government then acknowledged that the vast

proof of the alleged narcotics trafficking would not be relevant to the case against the Section

1960 Defendants, and that only a small portion of the money laundering proof would be relevant

in the trial of the Section 1960 Defendants. (1/26/06 Tr. 30-33) Thus, according to the

Government, the trial of the Section 1960 Defendants would only "last a couple of days," and

would be limited to the testimony of an undercover agent, and the introduction (probably through

stipulation) of financial records. (1/26/06 Tr. 34) Conversely, the Government contended that

the trial of the Section 1956 and Title 21 Defendants would be "of some length," and would

involve the introduction of a Colombian wiretap operation, consensually monitored

conversations, surveillance, and other proof. (1/26/06 Tr. 34-35) The Government also agreed

that its proof in the trial of the Section 1956 and Title 21 Defendants would be unaffected by the

absence of the Section 1960 Defendants. (1/26/06 Tr. 35-36)

This list of concessions by the Government means that whatever may be said of the

question of severance, it is clear that transferring the Section 1960 Defendants will not

significantly undermine the Government's interest in a joint trial of all the Defendants. There

would not be a prejudicial burden to the Government in trying the Section 1960 Defendants in

Florida as it would require (assuming no stipulations) only a handful of witnesses, most of whom

would be business records custodians, and would not require the Government to tip its hand in the prosecution of the remaining Defendants.  Moreover, a short trial of the Section 1960 Defendants in Florida would not overwhelm the prosecutors, since they would not have to master the other, more complicated proof of the interrelated narcotics and money laundering schemes. In short, there appears to be little risk that transfer of the Section 1960 Defendants in the peculiar circumstances present here would risk giving "rise to a multiplication of litigation resulting in a great inconvenience to the witnesses involved as well as considerable expense to the government."  *Morrison*, 946 F.2d at 489 (quoting *Zylstra*, 713 F.2d at 1336); *cf. Turkish*, 458 F. Supp. at 880 ("I have also considered the burdensome result in terms of judicial economy which the granting of these motions would entail.  The non-moving defendants clearly would be prosecuted in the Southern District of New York; defendant Knell would be tried less than three miles away in the Eastern District of New York; defendant Conlin would be tried some ten miles away in the District of New Jersey; and defendant Kellogg would be tried in the Middle District of California.").

Similarly, because there appears to be no reason why the Government could not offer the proof of the money remitting transactions in a New York trial of the remaining Defendants, transfer of the Section 1960 Defendants is not likely to unfairly undermine the Government's prosecution of the remaining Defendants.[12]  Accordingly, the Court believes that the Government's interest in joint trials of jointly charged Defendants does not, in this case,

---

[12]Of course, the Section 1956 Defendants may seek a severance from the Title 21 Defendants, but the resolution of that dispute is unaffected by transfer of the Section 1960 Defendants.

outweigh the other *Platt* factors that favor transfer.[13]

### III. Conclusion

Upon careful consideration of each factor enumerated above, the Court finds that

Defendants have satisfied their burden that transfer would best serve the interests of justice in

this case. Accordingly, the Motion to Transfer is GRANTED and the Clerk of this Court is

directed forthwith to take all steps necessary to transfer the cases of the eight moving Defendants

to the Southern District of Florida.

SO ORDERED.

Dated:      March 17, 2006
            New York, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[13]As the Government points out, if the Court were to first consider, and then grant, a motion for severance, then the corresponding burden on the Section 1960 Defendants from a New York trial would be considerably less. (1/26/06 Tr. 36-37) However, the Government has opposed severance of the Section 1960 Defendants and has offered no reason why the Court should consider that motion before the transfer motion. Moreover, while a severed trial in New York would no doubt impose a much reduced burden on the Section 1960 Defendants, it would still require them to travel to New York between now and the trial, let alone for the trial itself. Thus, the possibility of a severed trial in New York (which the Government opposes) is not enough to deny the transfer motion.

Service List:

Virginia L. Chavez Romano, Esq.
Daniel L. Stein, Esq.
Michael J. Garcia, Esq.
U.S. Attorney's Office, S.D.N.Y.
One St. Andrew's Plaza
New York, N.Y. 10007
*Counsel for the Government*

Barry S. Greff, Esq.
1112 Weston Rd., Suite 207
Weston, F.L. 33326
*Counsel for Defendants Miguel Valdes & Mavex Corp.*

Donna Newman, Esq.
121 West 27th St., Auite 1103
New York, N.Y. 10001
*Counsel for Defendant Mayra Ochoa*

Jose M. Quinon, Esq.
1401 Bricknell Ave., Suite 1000
Miami, F.L. 33131
*Counsel for Defendant Ines M. Poletti de Noriega*

Oscar S. Rodriguez, Esq.
2151 S. LeJeune Rd., Mezzanine
Coral Gables, F.L. 33134
*Counsel for Defendant Raul Holguin*

Richard L. Rosenbaum, Esq.
250 East Las Olas Blvd., Suite 1700
Fort Lauderdale, F.L. 33301
*Counsel for Defendants Carlos H. Ochoa & Daybreak Corp.*

Frederick L. Sosinsky, Esq.
225 Broadway, Suite 715
New York, N.Y. 10007
*Counsel for Defendant Mauricio Miranda*